DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-443-FDW

| BRUCE S. FULLER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| KEVIN INGRAM, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 11). Plaintiff is proceeding *in forma pauperis*. (Doc. No. 18).

I.   **BACKGROUND**

*Pro se* Plaintiff who is currently incarcerated at the Alexander Correctional Institution, filed a civil rights suit pursuant to 42 U.S.C. § 1983 while he resided at Lanesboro C.I. Plaintiff voluntarily dismissed this case, then the matter was reopened after he filed an Amended Complaint that alleged he was tricked into voluntarily dismissing the case. (Doc. No. 11). The Court informed Plaintiff that the Amended Complaint is seriously deficient and granted him the opportunity to file a Second Amended Complaint within 14 days. He was cautioned that, if he failed to do so, the Court would proceed on the Amended Complaint as filed. (Doc. No. 12 at 2-3). He was informed of his obligation to comply with all applicable rules, that an amended pleading supersedes those that precede it, and that piecemeal filings will not be permitted. (Id.). The Court granted Plaintiff an extension of time to file the Second Amended Complaint until June 1, 2018. (Doc. No. 14). Plaintiff has filed to *pro se* Letters but no Second Amended Complaint has been filed to date. See (Doc. No. 15, 16). The Amended Complaint is before the Court for initial review.

1

Plaintiff names as Defendants Director of Prisons Kenneth Lassiter, DPS Medical Supervisor Paula Smith, Central Prison Doctor Baker, and the following Lanesboro C.I. employees: Unit Manager Kevin Ingram, Captain Aaron, Superintendent of Medical Jerlines Bennett, Superintendent Herring, Assistant Superintendent Rogers, Program Supervisor Ed Gazo, Job Assignment Mrs. Jackson, Medical Supervisor Thompson, Medical Supervisor Mr. West, Assistant Unit Manager Lock-up Mr. Lemon, and Case Worker Mrs. Kletter.

Construing the Amended Complaint liberally and accepting the allegations as true, Plaintiff has medical problems for which he was briefly transferred to a medical camp on September 18, 2017. However, he was transferred back to Lanesboro C.I. on January 11, 2018, after he voluntarily dismissed this suit. By January 22, 2018, Ingram had planned to get back at Plaintiff but Plaintiff never knew the case had been dismissed.

Plaintiff was reassigned an orderly on January 12, 2018, "to easy" and Plaintiff did not feel right about it but he decided to let bygones be bygones. (Doc. No. 11 at 7). On January 22, 2018, the orderly did not want to push Plaintiff anymore and was not getting paid. Plaintiff went to the only person he could ask, Ingram, even though Plaintiff has a suit pending against him. When Plaintiff knocked on his door, Ingram jumped up and told him to get away from his door. Plaintiff said he had a problem and Ingram told an officer to lock him up. Plaintiff was taken towards F-Block and though he was going to be "pushed into podeum" and put his arm out to have it hit his hand first. (Id.). Plaintiff tripped and fell out of his wheelchair. Ingram came running, saying "mace him," and Plaintiff got maced as he was getting back into his wheelchair. (Id.). Plaintiff then got punched in the ribs by Ingram and he told officers to take him to Red Unit. Plaintiff said Ingram should not have contact because Plaintiff is suing him and Ingram said something about having "Frank Johns in [his] pocket…." (Doc. No. 11 at 8). This made Plaintiff blank out and try to spit

on Ingram. Now Plaintiff is in the hole and will probably stay there for a couple of years. Case Manager Lemon was a unit manager with Ingram on May 3, 2017, and is "over the hole and [a] bunch of others." (Id.).

Plaintiff had a stroke on January 22, 2018, and was taken to the hospital that night. On February 5, 2018, Plaintiff was sent to Central Prison Hospital and was sent back to Lanesboro on February 14, 2018, because Dr. Igboekwe changed [Plaintiff's] physical restrictions to make him compatible with going back to Lanesboro, based on falsified medical records, and Dr. Baker did the same thing on July 9, 2017. Paula Smith "allows doctors" to falsify medical records. (Doc. No. 11 at 9). Restrictions were placed, then amended when Plaintiff was transferred, then were re-imposed.

Plaintiff has been deprived of a shower chair for a year and a half even though he has a doctor order since May 23, 2017, and another inmate got one in one week. From February 14 to 21, 2018, he had no clothes or toilet paper yet he was able to shower. For 10 days his right arm was paralyzed and his speech was slurred. His left hand shakes badly. Plaintiff has a head injury with no equilibrium and is forgetful. Dr. Hayes ordered Mr. West in Medical on Friday February 16, 2018, to transfer Plaintiff to a medical camp but the administration said there were no medical beds in close custody. The request to waive Plaintiff to medium custody was denied. No nurses help Plaintiff shower. He will tip over and cannot wash all of himself. He is unable to hold his food tray or cup and has to use a straw. This is the administration/defendants' way of getting back at Plaintiff.

On camera, Sergeant Holden swung his stick like a bat at Plaintiff's head, making Ingram laugh while Plaintiff was chained.

Kenneth Lassiter allows prisons to do as they wish.

Unit Manager Cole is only allotting Plaintiff 20 pieces of paper each month unless the Court requests more.

Plaintiff asks that he be provided with extra paper, a notary public, reimbursement for stamps, the costs of this suit, and damages.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must

still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III. DISCUSSION

**(1) Parties**

**(a) No Allegations**

The Federal Rules of Civil Procedure require a short and plain statement of the claim. Fed. R. Civ. P. 8(a)(2). Conclusory allegations, unsupported by specific allegations of material fact are not sufficient. Simpson v. Welch, 900 F.2d 33, 35 (4th Cir. 1990). A pleader must allege facts, directly or indirectly, that support each element of the claim. Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002).

Plaintiff names a number of Defendants against whom he makes no factual allegations in the body of the Amended Complaint. He has failed to make a plausible claim against these individuals and, therefore, the claims against them will be dismissed.

**(b) Individuals Not Named as Defendants**

To the extent Plaintiff refers to individuals in the body of the Complaint who are not named as defendants in the case caption, these claims cannot proceed. See Fed. R. Civ. P. 10(a) ("[i]n the complaint the title of the action shall include the names of all the parties."); see Myles v. United

States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."); see, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served). Therefore, the claims against Defendants Aaron, Bennett, Gazo, Herring, Jackson, Kletter, Rogers, and Thompson will be dismissed.

### (c) Supervisors

A state official can be in a § 1983 suit in three ways: in his personal capacity, his official capacity, or in a more limited way, his supervisory capacity. King v. Rubenstein, 825 F.3d 206, 223–24 (4th Cir. 2016). For personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). In an official-capacity suit, however, "[m]ore is required:" the suit is "treated as a suit against the entity," which must then be a "'moving force' behind the deprivation," id. (quoting Polk County v. Dodson, 454 U.S. 312, 326 (1981)); thus, the entity's "'policy or custom' must have played a part in the violation of federal law," id. (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)). Meanwhile, a supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges that Defendant Lassiter allows prisons "to do as they wish." (Doc. No. 11 at 4).

6

The claims against Lassiter are too vague and conclusory to support relief under any of the foregoing theories.

**(2) Cruel and Unusual Punishment**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir.1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987).

**(a) Serious Medical Need**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted). The deliberate indifference standard has two components. The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that

7

is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. at 241 (internal quotation marks omitted). A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009). However, allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998).

Plaintiff alleges that he has medical conditions include stroke and head injury that result in loss of equilibrium, lack of stability, forgetfulness, shaking hands, and periods of paralysis and slurred speech. He claims that he has been deprived of a doctor-ordered shower chair since May 23, 2017. He has been denied a nurse's assistance in showering and feeding himself. On July 9, 2017, Dr. Baker falsified medical records which resulted in Plaintiff's transfer back to Lanesoro C.I. Plaintiff had a stroke and was hospitalized on January 22, 2018. On February 5, 2018, he was taken Plaintiff was sent to Central Prison Hospital, but was sent back to Lanesboro C.I. on February 14, 2018, because Dr. Igboekwe falsified his medical records and changed his physical restrictions which allowed him to return to Lanesboro C.I. On February 16, 2018, Dr. Hayes ordered Mr. West in Medical to transfer Plaintiff to a medical camp but the administration said there were no medical beds in close custody, and the request to waive Plaintiff to medium custody was denied.

Plaintiff further claims that Defendant Smith "allows doctors" to falsify medical records. (Doc. No. 11 at 9).

Plaintiff has stated a plausible claim of deliberate indifference to a serious medical need as to Defendant Baker. Dr. Igboekwe is not named as a Defendant, so the allegations against him cannot proceed, and there is no allegation that Mr. West's failure to follow Dr. Hayes' transfer order was deliberate, but rather, circumstances prevented him from completing the transfer. Plaintiff fails to allege which Defendant or Defendants were responsible for denying him a shower chair and a nurse's assistance in showering and caring for himself. However, Plaintiff has sufficiently alleged that doctors routinely falsify medical records and that Smith allows them to do so. Therefore, the claims against Smith will be permitted to proceed.

Therefore, Plaintiff's medical deliberate indifference claim will be permitted to proceed against Defendants **Baker** and **Smith** and the remaining claims will be dismissed.

**(b) Excessive Force**

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14. A verbal threat combined with action apparently designed to carry out that threat may state and Eighth Amendment claim. Hudspeth v. Figgins, 584 F.2d 1345, 1348 (4th Cir. 1978). However, "[v]erbal abuse alone does not violate a constitutional right." Moody v. Grove,

9

885 F.2d 865 (4th Cir. 1989) (unpublished) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

Plaintiff claims that, on January 22, 2018, Ingram maced and punched him when he fell out of his wheelchair. On another occasion, Sergeant Holden swung his stick like a bat at Plaintiff's head, making Ingram laugh while Plaintiff was chained. These allegations state a plausible claim for the use of excessive force against Defendants **Ingram** and **Holden**.

### (c) Conditions of Confinement

"Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in Farmer v. Brennan." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); see Farmer, 511 U.S. 825, 832 (1994). First, "Farmer's objective prong requires plaintiffs to demonstrate that 'the deprivation alleged [was], objectively, sufficiently serious.'" Scinto, 841 F.3d at 225. In order to be sufficiently serious, the deprivation must pose "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from ... exposure to the challenged conditions." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

Plaintiff alleges that he was placed in the "hole" and that his request to have his status changed from close to medium, which would allow him to go to a medical camp, was denied. Plaintiff's claim about these conditions of his confinement are too vague and conclusory to support relief. He does not describe the challenged conditions adequately and, further, he has no right to any particular housing or classification status. See Sandin v. Conner, 515 U.S. 472 (1995) (plaintiff does not have a federally protected liberty interest in any particular housing or classification unless it exceeds the scope of his original sentence and imposes an atypical and significant hardship in

10

relation to the ordinary incidents of prison life); Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991) (*en banc*) ("[C]hanges in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation) and the denial of privileges … are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and efficiently.").

However, Plaintiff's claim that Ingram is denying him the assistance and equipment which allow him to move around in a wheelchair, shower, eat, and drink, due to his medical conditions including stroke, are sufficient to raise a plausible claim that he is being denied constitutionally adequate conditions of confinement. He also claims that, from February 14 to 21, 2018, he had no clothes or toilet paper. However, he fails to allege which Defendant or Defendants were responsible for this condition. Therefore, even if these conditions were sufficiently serious to state an Eighth Amendment claim, it would be unable to proceed.

Therefore, Plaintiff's Eighth Amendment claim with regards to unconstitutional conditions of confinement will be permitted to proceed against Defendant **Ingram**.

 **(3)** **Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must demonstrate that he suffered some adverse impact or actual injury. See Am. Civ. Libs. Un. of Md., Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of

incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff appears to allege that Ingram had him transferred back to Lanesboro C.I. from a medical camp, beat him, and put him in the "hole" in retaliation for having filed this lawsuit. These allegations are sufficient to state a plausible retaliation claim. Plaintiff further claims that Lemon is the Unit Manager of the "hole" but fails to allege that Lemon was responsible for Plaintiff's placement there or retaliated against him in any other way. Plaintiff's claim that he was unable to transfer to a medical camp with his close custody status, that his request for medium custody status was denied, that he is not receiving help showering and eating because the "administration" is trying to get back at him, is too vague and conclusory to state a retaliation claim. (Doc. No. 11 at 9).

Plaintiff's retaliation claim will be permitted to proceed against Defendant **Ingram** but will be dismissed as to the other Defendants.

**(4)** **Access to the Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth, 584 F.2d at 1347. To make out a *prima facie* case of denial of access to the courts, the inmate cannot rely on conclusory

allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff contends that Unit Manager Cole is only allotting him 20 pieces of paper each month absent a court order and that he should be provided with extra paper, a notary public, and reimbursement for stamps.

To the extend that Plaintiff intended to state a claim for denial of access to the courts, this claim is insufficient to proceed. Plaintiff fails to allege that he had a non-frivolous post-conviction or civil rights claim that was hindered or impeded by Cole's actions. He has failed to state a plausible claim for relief, therefore, his access to courts claim will be dismissed.

**IV.    PENDING MOTIONS**

Plaintiff has filed two Letters which are construed as motions for the appointment of counsel. (Doc. Nos. 15, 16). Plaintiff argues that needs an attorney to assist him due to his medical issues and conditions of confinement. He claims that he has sought the assistance of lawyers but has been unsuccessful.

There is no absolute right to the appointment of counsel in civil actions such as this one. Therefore, a plaintiff must present "exceptional circumstances" in order to require the Court to seek the assistance of a private attorney for a plaintiff who is unable to afford counsel. Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Plaintiff has failed to demonstrate the existence of

exceptional circumstances that justify appointment of counsel. Therefore, Plaintiff's requests for the appointment of counsel will be denied.

## IV. CONCLUSION

For the reasons stated herein, the Amended Complaint will proceed for deliberate indifference to a serious medical need against Defendants **Baker** and **Smith**; for the use of excessive force against Defendants **Ingram** and **Holden;** for unconstitutional conditions of confinement against Defendant **Ingram**; and for retaliation against Defendant **Ingram**. The remainder of the Amended Complaint is dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(22). Plaintiff's Letters, (Doc. Nos. 15, 16), are construed as motions for the appointment of counsel and are denied.

**IT IS THEREFORE ORDERED** that:

(1) The Amended Complaint survives initial review under 28 U.S.C. § 1915 against Defendants **Baker** and **Smith** for deliberate indifference to a serious medical need; against Defendants **Ingram** and **Holden** for the use of excessive force; against Defendant **Ingram** for unconstitutional conditions of confinement; and against Defendant **Ingram** for retaliation.

(2) The remaining claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

(3) Plaintiff's Letters, (Doc. Nos. 15, 16), are construed as motions for the appointment of counsel and are **DENIED**.

(4) **IT IS FURTHER ORDERED THAT** Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Baker, Holden, Ingram,** and **Smith** who are current or former employees of NC DPS.

Signed: September 28, 2018

Frank D. Whitney
Chief United States District Judge